UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| ANTHONY DAVIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:18CV1437 HEA |
| | ) | |
| LOHR DISTRIBUTING CO, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION, MEMORANDUM AND ORDER**

This matter is before the Court on Defendant's Motion for Partial Dismissal, [Doc. No. 4]. Plaintiff has filed a response in opposition, to which Defendant has filed a reply; the issues are fully briefed. For the reasons set forth below, the motion will be granted.

**Facts and Background**

On August 28, 2018, Plaintiff filed a Complaint, alleging claims of racial discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*. In the "Nature of the Action" section, Plaintiff alleges that "Defendant created, maintained, and subjected Plaintiff to a hostile and discriminatory work environment, wherein he was repeatedly harassed because of his race, discriminatorily accused of numerous infractions, and verbally abused over the course of several years, by several of Defendant's agents, including a number of Plaintiff's supervisors." Plaintiff seeks to "recover compensatory damages for past

and future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses," punitive damages, reasonable attorney fees and "such other and further relief as the Court deems just and necessary

For purposes of the motion now before the Court, the record set forth in the Complaint establishes the following facts.

Plaintiff began his employment with Lohr in 2013. During Plaintiff's employment, however, he was consistently harassed and discriminated against for his race. Plaintiff, throughout his tenure with Lohr, had to endure, *inter alia*, continual harassment including the following: a. Plaintiff's white co-workers and managers would often speak to him and other African American employees in a racist, derogatory manner; b. white workers had the choice to be rerouted from areas with a large percentage of African Americans, and were, in general, given preference to choose better routes than Plaintiff and other African American employees; c. white drivers received ample assistance, while black drivers including Plaintiff were most often left to complete their routes alone; in general, the non-white employees were forced to work under more-difficult conditions than their white co-workers; d. in Plaintiff's presence, white workers were told things like that they did not have to "go to the hood;" e. when Plaintiff had issues, he was informed that he was on the "ghetto route" and to "tough it out;" f. Plaintiff's white

similarly-situated co-workers were paid higher wages than Plaintiff for no discernable reason other than race.

Numerous other employees witnessed the harassment of Plaintiff, noting Plaintiff's treatment as unwarranted as Plaintiff was held to unreasonable standards to which his white co-workers were not. In addition, coworkers noted that Plaintiff was receiving the worst visible abuse, while noting that Lohr had a culture of racism.

Out of fear for losing his job, Plaintiff attempted for years to ignore the harassment and focus on performing his duties to the best of his ability.

Among other of Defendant's supervisors, Plaintiff's manager Bill Lenz constantly, over the course of multiple years, spoke to Plaintiff in a racist and disrespectful manner, privately, and in front of Plaintiff's coworkers. As just a few of many examples, Lenz, knowing that Plaintiff lived in a predominantly black neighborhood, would ask Plaintiff if he "ha[d] fun in the jungle," and would ask Plaintiff following his lunch break things like whether Plaintiff "ate any chicken or watermelon" that day.   This verbal abuse continued for years. The pattern of verbal abuse was so bad that on multiple occasions, Plaintiff's coworkers pulled him aside and said things to him such as "I don't know how you feel about it, but I find the things that [the managers] say to you to be offensive," and other statements making it clear that the racist treatment of Plaintiff was so pervasive and glaring that it was offensive even to Plaintiffs' white co-workers.

In addition to the racist comments directed at Plaintiff, Defendant's managers singled him out in other improper and negative ways, often treating him with an obvious double-standard, penalizing or reprimanding Plaintiff for behavior that management allowed and ignored in the case of similarly-situated white co-workers; for instance, on one occasion, Lenz wrongfully blamed Plaintiff for a mistake made by the company in which Plaintiff did not complete a delivery because it was not accompanied by an invoice. In the warehouse, multiple signs were posted that said, "no invoice / no delivery;" that was a common policy that Plaintiff's white co-workers also followed. Despite this, Lenz told Plaintiff in front of his co-workers that Plaintiff "had no common sense."

As another example of being negatively singled out for no apparent reason other than his race, Plaintiff was completing an inventory count and was ordered to turn off his music because "a white coworker didn't want to hear it." Meanwhile, Plaintiff's white co-workers were never scrutinized for playing their choice of music, and certainly were never told their music "bothered a black coworker."

Over the course of his employment, Plaintiff was repeatedly passed over for promotion in favor of white co-workers with much less experience and/or tenure. As just one of many examples over the years, in May of 2016, Plaintiff was promised an opportunity to be hired full-time as soon as Lohr began filling full-time positions. As Plaintiff had seniority over many of his peers, he was assured that he would be

the first to be moved into a full-time position once the hiring period began. However, Defendant promoted another employee, Ryan Colt, to a full-time position before Plaintiff. Colt, a white man, was trained by Plaintiff and was given the job despite the position never being opened up to Plaintiff. Plaintiff's being passed over for promotion in this manner happened repeatedly over the course of his employment; the situation with Colt was only one of many instances in which Defendant racially discriminated against Plaintiff in its promotion of employees.

Another facet of Plaintiff's employment where he was treated in an obviously worse manner than his similarly-situated white co-workers was in the treatment of Plaintiff's requests for vacation time. As just one of many examples, throughout 2016, manager Cory Wallace began to reject Plaintiff's requests for vacation days. When Plaintiff questioned his rejections, Wallace claimed that other employees entered vacation requests first; that assertion, however, was false; rather, it was clear to Plaintiff that white co-workers were given preference for vacation days over Plaintiff, regardless of when their requests were made.

On another occasion, Plaintiff asked if he could take off every Friday in the month of December 2016 as another of his coworkers, David Bax, a white employee, was allowed to do so the previous month. Wallace summarily denied Plaintiff's request, and claimed that Plaintiff would be a "dick" for doing that.

5

Later that month, Plaintiff requested time off for a vacation. The vacation, spanning over the weekend, included days beginning from Thursday through the following Tuesday. Despite requesting off for each of these days, Wallace accused Plaintiff of failing to request the day off on Tuesday. As a result of this accusation, Wallace filed a report against Plaintiff for missing a day of work; Plaintiff's white co-workers were never penalized for missing work when putting in an approved request, as was the case for Plaintiff.

Additionally, on numerous occasions, Wallace openly admitted his belief that Plaintiff should not have as many vacation days as he did; something Wallace never did to any white co-worker. Following Wallace's complaining about Plaintiff's vacation days, Plaintiff's vacation days were then inexplicably taken away, due to a supposed "mistake" made by the Human Resources department, despite their prior verification; Plaintiff's co-workers never had an issue with losing vacation days and/or getting time off approved.

In late November 2016, Plaintiff approached management about the behavior he had suffered through for years, including many of the examples delineated above, and conveyed to management that he felt he was being mistreated for being African American.

Following his report, it became obvious to Plaintiff that management was unhappy with his suggestion that Defendant was racist. The retaliation against him

6

then began in earnest; for instance, in November 2016, Wallace accused Plaintiff of coming to work under the influence of marijuana; management suggested he take a drug test or risk losing his job due to that accusation.   Knowing this accusation to be false, Plaintiff voluntarily took a drug test.   The results of the drug test came back negative.   Other similarly-situated white employees drank alcohol and used drugs, on many occasions during company time, and were never forced to take drug tests.

In December of 2016, Plaintiff was fired from Lohr Distributing Co, Inc.   His termination immediately followed his complaint to management of the racist treatment he was enduring, as it became clear that management was going to "teach him a lesson" for complaining of their racist treatment.   Plaintiff's employment was ostensibly terminated because he was "stealing time" from the company.

During Plaintiff's employment at Lohr, he was expected to clock in and out from his shifts on his personal phone.   However, the service inside the building was nearly inoperative and he was, therefore, unable to clock in or out from inside the building.   Plaintiff informed Lenz of this issue over 8 months prior, but nothing was ever done to amend the issue.   As a result he would have to wait to clock out until he was out of the building and had reached a farther distance away.   Many issues arose from this delay, as it would take a considerable amount of time after Plaintiff left work before he was able to clock out.   Additionally, due to the delay, Plaintiff forgot to immediately clock out when he left on a few number of occasions.

7

However, whenever this happened, he immediately informed Lenz of the error, and amended the situation immediately.

Additionally, Plaintiff would often come in a few hours late, when given pre-approval from Lenz, and drive his route in a shorter amount of time in order to save the company money.   Despite all of these efforts, Plaintiff's employment was still terminated based on this accusation of "stealing time."

Plaintiff's termination followed closely Plaintiff's asking management whether he was being treated in a discriminatory manner due to being African American. In fact, no white co-worker was ever terminated for the issue for which Plaintiff was terminated despite many of Plaintiff's white co-workers having identical conduct in relation to the clocking-in and logging of their time due to the phone-service problem.

**Legal Standard**

The purpose of a motion to dismiss for failure to state a claim is to test the legal sufficiency of the complaint. To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S.544, 570 (2007)). A plaintiff need not provide specific facts in support of his allegations, *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam), but "must include sufficient factual

information to provide the 'grounds' on which the claim rests, and to raise a right to relief above a speculative level." *Schaaf v. Residential Funding Corp.*, 517 F.3d 544, 549 (8h Cir. 2008) (citing *Twombly*, 550 U.S. at 555 & n.3). This obligation requires a plaintiff to plead "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. A complaint "must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Id.* at 526 (quoted case omitted). This standard "simply calls for enough facts to raise reasonable expectation that discovery will reveal evidence of [the claim or element]." *Id.* at 556.

On a motion to dismiss, the Court accepts as true all of the factual allegations contained in the complaint, even if it appears that "actual proof of those facts is improbable" *id.*, and reviews the complaint to determine whether its allegations show that the pleader is entitled to relief. *Id.* at 555-56. The principle that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. *Iqbal*, 556 U.S. at 678-79 (stating "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice"). Although legal conclusions can provide the framework for a complaint, they must be supported by factual allegations. *Id.* at 679. Plausibility is assessed by considering only the materials that are "necessarily embraced by the pleadings and

9

exhibits attached to the complaint[.]" *Whitney v. Guys, Inc.*, 700 F.3d 1118, 1128 (8th Cir. 2012) (quoted case omitted). The plausibility of the plaintiff's claim is reviewed "as a whole, not plausibility of each individual allegation." *Zoltek Corp. v. Structural Polymer Grp.*, 592 F.3d 893, 896 n.4 (8th Cir. 2010).

## Discussion

Defendant argues that portions of Plaintiff's claims of race discrimination in Count I should be dismissed because Plaintiff failed to timely exhaust his administrative remedies. Defendant also seeks dismissal of portions of Plaintiff's claims because Plaintiff failed to raise claims regarding a hostile work environment in his charge.

Plaintiff contends that he had pled hostile work environment discrimination claims in a manner that sets forth various theories of recovery for a pernicious and ongoing patter of racial discrimination that culminated with his termination and that his termination was an act of illegal retaliation directly motivated and caused by Plaintiff's complaining of his racially discriminatory treatment.

In response, Defendant contends that Plaintiff's claims of hostile work environment based on race are untimely, are not administratively exhausted, cannot support a continuing violation theory, and should be dismissed. Defendant argues that Plaintiff's allegations regarding the alleged discriminatory treatment were discrete acts, and therefore, do not support a continuing violation.

Title VII requires exhaustion of administrative remedies before filing a law suit in federal court. *See* 42 U.S.C. § 2000e-5(e)(1); *e.g., Brooks v. Midwest Heart Grp.*, 655 F.3d 796, 800 (8th Cir. 2011) (Title VII). Exhaustion requires (1) timely filing a charge of discrimination with the EEOC setting forth the facts and nature of the charge and (2) receiving notice of the right to sue. *See* 42 U.S.C. § 2000e-5(b), (e), (f)(1); 29 U.S.C. § 626(b), (d). A charge of discrimination under Title VII or the ADEA must be filed no more than 300 days after the alleged unlawful employment action. 42 U.S.C. § 2000e-5(e)(1); *Richter v. Advance Auto Parts, Inc.*, 686 F.3d 847, 851 (8th Cir. 2012).

Generally, because each incident of discrimination or retaliation is a "discrete act," an employee must exhaust the administrative process for each discrete act for which he or she seeks to bring a claim. *Wedow v. City of Kansas City, Mo.*, 442 F.3d 661, 672 (8th Cir. 2006). The plaintiff's charges must be "sufficiently precise to identify the parties, and to describe generally the action or practices complained of." *Cottrill*, 443 F.3d at 634 (quoting 29 C.F.R. § 1601.12(b)). "If the EEOC gives the individual a right-to-sue letter following the EEOC investigation, the charge limits the scope of the subsequent civil action because the plaintiff may [only] seek relief for any discrimination that grows out of or is like or reasonably related to the substance of the allegations in the administrative charge." *Id.* (internal citation and quotation omitted). "Permitting claims to be brought in court which are outside the

scope of the EEOC charge would circumscribe the EEOC's investigatory and conciliatory role and deprive the charged party of notice of the charge." *Id.*

Plaintiff filed his EEOC Charge of Discrimination ("Charge") on July 24, 2017. According to the statute of limitations, only those allegedly unlawful employment acts occurring on or after September 27, 2016, were subject to administrative exhaustion through the Charge. Plaintiff's principal allegations are that he complained to a member of management that his most recent supervisor, Corey Wallace, was harassing him because of his race. In retaliation for the complaint, Mr. Wallace accused him of being under the influence of drugs and required him to take a drug test, which he passed. On or about December 15, 2016, his employer terminated him for "stealing time." Plaintiff attempts to plead hostile work environment claims based on race discrimination by referencing a hostile and discriminatory work environment in the general allegations in the Nature of the Action in the Complaint. Plaintiff's termination on December 16, 2016 is the only alleged discriminatory act that occurred within the statutory limitations period.

While a circumstance may exist in which a termination is part of a continuing discriminatory practice, this case is not one of those situations. Although it is true that Plaintiff's Charge was timely filed with respect to his termination, the continuing violation theory does not apply to this case to save Plaintiff's remaining, untimely claims. The Supreme Court has explained that "discrete discriminatory

acts are not actionable if time barred, even when they are related to the acts alleged in timely filed charges. Each discriminatory act starts a new clock for filing charges alleging that act." *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002) (Title VII context). "Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify. Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable unlawful employment practice." *Id.* at 114; *see also Williams v. Lender Processing Servs., Inc.*, 2013 WL 5739059, at *1 (E.D. Mo. Oct. 22, 2013) (dismissing claims under the MHRA for failure to train, failure to promote, constructive demotion, and failure to approve a pay raise because each claim involved discrete acts of discrimination rather than a continuing violation); *Richter*, 668 F.3d at 851 ("[*Morgan*] abrogates the continuing violation doctrine as previously applied to claims of discriminatory or retaliatory actions by employers, and replaces it with the teaching that each discrete incident of such treatment constitutes its own 'unlawful employment practice' for which administrative remedies must by exhausted." (quotation omitted)). Because "discrete acts that fall within the statutory time period do not make timely acts that fall outside the time period," *Morgan*, 536 U.S. at 112, only Plaintiff's termination claim is actionable. *See Tisch v. DST Sys., Inc.,* 368 S.W.3d 245, 255 (Mo. Ct. App. 2012) (applying *Morgan* to conclude that complaints of demotion, denial of transfer, and failure to

promote were all discrete acts of termination under MHRA and not subject to continuing violation theory).

The *Morgan* Court acknowledged an exception to its bar on the consideration of discriminatory actions that occur outside the statutory period, but solely for hostile work environment claims. *Morgan*, 536 U.S. at 117. "A charge alleging a hostile work environment claim ... will not be time barred so long as all the acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period." *Id*. at 122; *Rebouche v. Deere Co.*, 786 F.3d 1083, 1087 (8th Cir. 2015) (refusing to consider discriminatory actions that occurred outside of the statutory period because the plaintiff had not asserted hostile work environment claim); *Rowe v. Hussman Corp.,* 381 F.3d 775, 779 (8th Cir. 2004) ("Because her charge alleged a hostile work environment − a claim based on the 'cumulative effect of individual acts − [the plaintiff's] hostile work environment claim was timely if **'an act contributing to [the] claim occur[ed] within the filing period....'**") (citation omitted).

Plaintiff is not entitled to rely on the exception that permits consideration of actions occurring outside the time period. Plaintiff failed to allege or reference in his EEOC charge that Defendant had created a "hostile work environment." In the Charge, Plaintiff identified the earliest date of discrimination as October 1, 2016 and latest as December 15, 2016. Plaintiff failed to check the box on the form for

"continuing action," which would have indicated that he was alleging a continuing practice of discrimination. Plaintiff's Charge checked boxes indicated race and retaliation in relation to his termination. Although there is no "hostile work environment" box to check on the Charge, Plaintiff could have listed hostile work environment and checked the "other" box. Hostile work environment claims are not like or reasonably related to claims for wrongful termination. *See, e.g., Gipson v. KAS Snacktime Co.* 83 F.3d 225, 229 (8th Cir. 1996) (for a claim of hostile work environment "[t]o be properly exhausted [it] must be separately raised in the administrative charge, because it is not reasonably related to a claim of discrete act of discrimination, such as [a termination]]") (abrogated on other grounds).

Applying these principles, the Court finds that all of the alleged pre-September 27, 2016, incidents fall into the category of discrete acts so Plaintiff may not now salvage any time-barred claims by asserting a continuing violation theory. The alleged route assignments, failure to promote, and vacation issues were discrete adverse actions that had immediate and tangible effects on Plaintiff's employment. *See Gipson*. 83 F.3d at 229 (claim for assignment to a rural sales territory is time-barred as a discrete employment action). The acts, whether wrongful or not, were discrete, completed acts at the time they occurred.

Accordingly, Plaintiff's claims of discrimination as a result of being assigned less desirable routes, failure to receive promotions, denial of vacation requests each

were actionable at the time that they occurred, and Plaintiff's failure to assert administrative charges based on these "discrete acts" that occurred before the statutory time period began to run means that his time to do so for those actions has expired. *Richter*, 686 F.3d at 851; *Betz*, 578 F.3d at 937-38. Plaintiff's claims of hostile work environment do not save his claims. The claims he now asserts are not reasonably related to the charge that a single supervisor retaliated against him. There is no mention of Plaintiff's hostile work environment in the charge filed with the EEOC.

**Conclusion**

Based upon the foregoing analysis, Plaintiff's claims arising under Title VII based upon acts occurring or allegedly occurring prior to September 27, 2016, as well as all claims which were not described in his Charge of discrimination or are not like or reasonably related to claims described in that Charge, specifically including the claims of discrimination set forth in Paragraphs 10, 11 (including all subparts), and 12, the claims of unequal pay set forth in Paragraph 11(f) of the Complaint, the claims of denial of promotion set forth in Paragraphs 22 to 27 of the Complaint, and the claims relating to vacation set forth in Paragraphs 28 to 38 of the Complaint, are dismissed.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Partial Dismissal, [Doc. No. 4], is granted.

**IT IS FURTHER ORDERED** that Plaintiff's claims arising under Title VII based upon acts occurring or allegedly occurring prior to September 27, 2016, as well as all claims which were not described in his Charge of discrimination or are not like or reasonably related to claims described in that Charge, specifically including the claims of discrimination set forth in Paragraphs 10, 11 (including all subparts), and 12, the claims of unequal pay set forth in Paragraph 11(f) of the Complaint, the claims of denial of promotion set forth in Paragraphs 22 to 27 of the Complaint, and the claims relating to vacation set forth in Paragraphs 28 to 38 of the Complaint, are dismissed.

Dated this 9th day of May, 2019.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE